Butler v. Hitchiner Man. Corp.      CV-96-624-JD  12/04/97

UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Doris J. Butler

        v.                             Civil No. 96-624-JD

Hitchiner Manufacturing Corp.


                            O R D E R


     The plaintiff, Doris J. Butler, brought this action against

the defendant, Hitchiner Manufacturing Corporation, alleging that

the defendant discriminated against her due to her age and sex,

as well as asserting various state law claims.  The plaintiff

subsequently dropped her federal sex discrimination claim and the

portion of one state law claim relating to sex discrimination.

Before the court is the defendant's motion to dismiss several of

the claims against it for failure to state a claim upon which

relief can be granted (document no. 7).


                          Background[1]

     The plaintiff was employed by the defendant from May 25 to

August 3, 1993, and from December 9, 1993, to September 27,

_____

     The facts relevant to the instant motion have either been
alleged by the plaintiff or are not in dispute.

1994.[2]  Her duties at her initial position as a utility operator involved wiping golf clubs with naphtha, and her employment was governed at least in part by an employee handbook.

After she was recalled, the plaintiff requested that she be promoted to the position of inspector, but her request was denied.  On December 16, 1993, the plaintiff was required to take a vision test in association with the requested promotion. Younger employees seeking promotion were not required to take the test.  The plaintiff obtained prescription eyeglasses subsequent to the examination and was still not promoted to the position of inspector.

The plaintiff continued to seek promotion, making at least five requests to be promoted.  Each time her request was denied. She alleges that she was passed up for promotion because of her age while younger employees with less experience were promoted. On February 25, 1994, after the plaintiff had made numerous requests for promotion, a rule was posted stating that no employee could be promoted within ninety days of commencing employment.  The plaintiff alleges that despite this rule, other employees were promoted within the first ninety days of their employment.

---

[2]The plaintiff was laid off on August 3, 1993, due to a lack of work for her to perform and recalled on December 9, 1993.

2

On March 14, 1994, the plaintiff was promoted to the position of inspector. She received poor job performance evaluations in this position, but she asserts that her work was undermined by other employees. For example, some of the men whose work the plaintiff inspected would remove tags from items that the plaintiff marked as inadequate, thereby interfering with her ability to perform her work satisfactorily. Some men also spoke to the plaintiff using harsh language, and one pushed carts toward her in a threatening manner. The plaintiff alleges that her direct supervisor knew of these problems and did nothing to correct them. Management criticized the plaintiff when she brought these allegations to their attention.

On August 8, 1994, the plaintiff's inspection position was eliminated. She was given a job weighing clubs. However, because the plant was having mechanical problems, the plaintiff did not have enough work to do to keep her occupied. She reported this fact to management and was told that the defendant understood the problem and would not penalize her. Despite these assurances, she was later criticized for not being sufficiently productive.

The plaintiff was dismissed on September 27, 1994, and replaced with a younger employee. Although her job performance was cited as a reason for her discharge and the plaintiff's

3

discussion reports, which apparently reflect employee performance information, contained information critical of her performance, she received three merit pay raises during her second term of employment with the defendant. In addition, the plaintiff asserts that the negative information in the discussion reports was inaccurate.

Prior to her dismissal, the plaintiff had a number of conflicts with the defendant: she was written up for taking off part of a day for a family emergency; she refused to sign inaccurate written warnings which stated that she was failing to perform her job as required; a foreman berated her regarding her work performance in front of other employees on several occasions; and, after her inspection position was eliminated, she was criticized for lack of productivity in her new position despite the fact that there was not enough work for her to do. She asserts that she was not terminated because of her performance, but for various improper motives of the defendant as evidenced by these episodes. After the defendant terminated the plaintiff's employment, the plaintiff sought employment elsewhere. In doing so, she was required to explain her termination by the defendant to potential employers.

On December 23, 1996, following her receipt of a right-to-sue letter from the Equal Employment Opportunity Commission, the

plaintiff filed the complaint in the instant action.  On June 16, 1997, the plaintiff amended her complaint, which now alleges the following counts:  wrongful discharge (count I); breach of contract by retaliatory failure to promote (count II); breach of contract by failure to follow disciplinary step procedure (count III); violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, as amended, (count IV); defamation (count VI); and liability for plaintiff's attorney's fees (count VII).[3]  The defendant moved to have the claims against it in counts I, II, III, VI, and VII dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## Discussion

Although the defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it had already filed an answer to the plaintiff's complaint so the pleadings were closed under Fed. R. Civ. P. 7(a).  For this reason, the court will treat the defendant's motion to dismiss as a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).  The standard for

---

[3]In the plaintiff's amended complaint, she withdrew Count V, containing allegations of sex discrimination under Title VII of the Civil Rights Act of 1964, and the portion of count II dealing with sex discrimination by retaliatory failure to promote.  The plaintiff has maintained her allegations in count II to the extent they do not allege sex discrimination.

5

evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion.  See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986).  The court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'"  Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).  The court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [she] is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)).  In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiff.  See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (applying Rule 12(b)(6)); Santiago de Castro, 943 F.2d at 130 (applying Rule 12(c)).  Great specificity is not required to survive a Rule 12 motion.  "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'"  Garita, 958 F.2d at 17

6

(quoting 5A Charles A. Wright & Arthur R. Miller, <u>Federal</u>

<u>Practice and Procedure</u> § 1357 (1990)).

I. <u>Wrongful Discharge</u>

In count I, the plaintiff alleges that she was fired due to her age and performance problems created by a hostile work environment.  She also claims that she was discharged for purported cause which was not substantiated, asserting that her termination was the result of her taking a portion of a day off to attend to a family emergency, refusing to sign an inaccurate written warning, refusing to sign additional warnings, and informing her employer when she did not have enough work to do.[4]

"A plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action."  <u>Wenners v. Great State Beverages, Inc.</u>, 140 N.H. 100, 103, 663 A.2d 623, 625 (1995), <u>cert. denied</u>, 116 S. Ct. 926 (1996); <u>see also</u> <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d 413, 429 (1st Cir. 1996) (following <u>Wenners,</u> but noting wrongful discharge

_____

[4]The defendant asserts that the plaintiff has failed to plead a causal link between these actions and her termination. However, these specific factual allegations are incorporated in the plaintiff's claim in count I.  <u>See</u> Compl., ¶¶ 28, 30, 31, 34, 36, 43.  The court's requisite broad reading of the plaintiff's claims indicates that the complaint sweeps widely enough to encompass the assertion that the plaintiff's termination was causally linked to her conduct.

action could proceed if statute did not provide private cause of action). Therefore, the plaintiff's claims regarding discrimination based on age and hostile work environment under this count must fail because the ADEA and Title VII of the Civil Rights Act of 1964, respectively, provide a private cause of action for such claims. See 29 U.S.C.A. § 623 (West 1985 & Supp. 1997); 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1994 & Supp. 1997).

As to the plaintiff's claim that she was wrongfully discharged in violation of public policy, "[t]o assert a claim for wrongful discharge under New Hampshire law, plaintiff must allege that (1) her employers were motivated by bad faith, malice or retaliation; and (2) they discharged her because she performed acts that public policy would encourage or refused to perform acts that public policy would condemn." Miller v. CBC Companies, 908 F. Supp. 1054, 1065 (D.N.H. 1995) (quoting Wenners, 140 N.H. at 102, 663 A.2d at 625). The plaintiff's claims survive under the first prong of the test because she alleges in her complaint that the defendant's actions were motivated by bad faith, malice, and retaliation. See Compl., ¶ 45. The defendant argues, however, that the plaintiff's claims fail under the second prong of the test because it is clear that there is no public policy as to the acts asserted by the plaintiff. The determination as to what constitutes a public policy is ordinarily for the jury,

8

unless the presence or absence of a public policy is so clear that the court may rule on it as a matter of law.  See Frechette v. Wal-Mart Stores, Inc., 925 F. Supp. 95, 98 (D.N.H. 1995).  At this stage of the proceedings, the court cannot conclusively ascertain that the plaintiff is unable to prove any set of facts demonstrating that she performed "acts that public policy would encourage or refused to perform acts that public policy would condemn."  See Miller, 908 F. Supp. at 1065; Wenners, 140 N.H. at 102, 663 A.2d at 625.

Therefore, the court grants the defendant's Rule 12 motion as to the plaintiff's wrongful discharge claims based on age and hostile work environment in count I, but denies the motion as to her other claims in this count.

II. Breach of Contract

In an at-will employment relationship, either party can end the relationship with or without cause.  See Panto v. Moore Business Forms, Inc., 130 N.H. 730, 732, 547 A.2d 260, 262 (1988).  When an employment relationship is regulated by a contract, the nature of the relationship may be altered by the contract so that dismissal is appropriate only for cause.  See Lowell v. U.S. Sav. Bank of America, 132 N.H. 719, 723, 572 A.2d 184, 187 (1990).  The presumption in New Hampshire is that

9

employees and employers have an at-will relationship. See Kern v. Kollsman, 885 F. Supp. 335, 347 (D.N.H. 1995). Even without an explicit employment contract, however, an employee handbook may function as a contract, altering either the duration or the terms and conditions of the employment relationship. See Panto, 130 N.H. at 735, 547 A.2d at 264 (enforceable unilateral contract formed where handbook is offer accepted by continued performance of job). In other cases, despite the existence of a handbook, waivers within the handbook prevent it from altering the at-will relationship. See Kern, 885 F. Supp. at 347 (citing Butler v. Walker Power, Inc., 137 N.H. 432, 437, 629 A.2d 91, 94 (1993)) (disclaimer clearly stated nothing in handbook is intended to create employment contract).

In counts II and III, the plaintiff alleges that the employee handbook provided by the defendant constituted a contract, thereby altering the presumption of an at-will employment relationship. The plaintiff further claims there is no waiver or disclaimer stating that the handbook does not serve as a contract, see Pl.'s Obj. to Def.'s Mot. to Dismiss at 4, and therefore she was entitled to rely on the manual as a contract. The defendant denies that any contract was created and attempts to cabin the plaintiff's claims under the rubric of wrongful discharge. However, the handbook is not before the court.

10

Without reference to the handbook the court cannot ascertain that the plaintiff can prove no set of facts entitling her to relief. The court therefore denies the defendant's Rule 12 motion to the extent that it seeks dismissal of the plaintiff's breach of contract claims in counts II and III.

III. Defamation

In count IV, the plaintiff claims she was defamed by three types of statements: (1) her explanation of her termination to potential employers during job interviews; (2) inaccurate statements concerning her job performance contained in discussion reports; and (3) her foreman berating her in front of other employees regarding her job performance. The defendant argues that the plaintiff has failed both to specify the facts underlying her claims with sufficient particularity and to allege unprivileged publication to a third party as to each of these allegedly defamatory communications.

To prove defamation under New Hampshire law, a plaintiff must show that the "defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118, 635 A.2d 487, 492 (1993); accord

11

<u>Duchesnaye v. Munro Enterprises</u>, 125 N.H. 244, 250, 480 A.2d 123, 125-26 (1984). A statement is defamatory only if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." <u>Nash v. Keene Pub. Corp.</u>, 127 N.H. 214, 219, 498 A.2d 348, 351 (1985). Statements that are substantially true are not actionable. <u>See Simpkins v. Snow</u>, 139 N.H. 735, 740, 661 A.2d 772, 776 (1995). New Hampshire recognizes a conditional privilege for statements that "although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a [reasonable belief] of its truth, provided that the statements [were] not made with actual malice." <u>See id.</u>, 661 A.2d at 776-77 (internal quotation omitted).

The plaintiff's first claim, that "her character became a question during job interviews when having to explain termina- tion," Compl. at ¶ 74, fails because New Hampshire has not recognized a cause of action for defamation by self-publication. The plaintiff's second claim, that her discussion reports contained inaccuracies, fails because she alleges neither publication to a third party or negligence in publication.

However, the plaintiff's claim that her foreman berated her in front of other employees regarding her job performance states all the necessary elements of a claim for defamation. She has alleged that the statements are false and defamatory and that

12

they were published to the other workers, who apparently qualify as unprivileged third parties.  Berating an employee in the presence of other employees might, depending on the circumstances, violate the defendant's duty of reasonable care in making such remarks.  At this stage, the defendant has not demonstrated that the plaintiff can prove no set of facts that would entitle her to relief, and the plaintiff is entitled to offer evidence to support her claim that she was defamed by her foreman.

Therefore, the court grants the defendant's Rule 12 motion as to the portion of count VI dealing with the plaintiff's statements during job interviews and the inaccuracies in the plaintiff's discussion reports, but denies the motion with respect to the claim in count VI that the plaintiff's foreman defamed her by disparaging her work qualifications in front of other workers.

IV. Liability for Plaintiff's Attorney's Fees

In count VII, the plaintiff asserts that the defendant is liable to her for attorney's fees associated with this action.  However, the plaintiff has produced no legal authority for the proposition that a claim for attorney's fees constitutes an independently cognizable cause of action.  The court concurs with

the defendant's argument that no such independent cause of action exists. Therefore, the court grants the defendant's Rule 12 motion on count VII to the extent that the count asserts an independent cause of action. This ruling does not preclude the plaintiff from recovering attorney's fees if otherwise permitted by law.

## Conclusion

For the reasons stated above, the defendant's Rule 12 motion (document no. 5) is granted as to the following claims: the wrongful discharge claims in count I based on age and hostile work environment; the defamation claims in count VI pertaining to the plaintiff's statements made during job interviews and the inaccuracies in the plaintiff's discussion reports; and the claim for attorney's fees in count VII. The remainder of the motion is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 4, 1997

cc:  Leslie H. Johnson, Esquire
     Robert E. Jauron, Esquire

14