Merrimack
No. 91-141

MICHAEL A. BUTLER

v.

WALKER POWER, INC.

July 19, 1993

*Sulloway Hollis & Soden,* of Concord (*Edward M. Kaplan* and *Elizabeth G. Carney* on the brief, and *Mr. Kaplan* orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Carol Ann Conboy* and *Kevin M. Leach* on the brief, and *Ms. Conboy* orally), for the defendant.

HORTON, J.   The plaintiff, Michael A. Butler, brought a case for breach of contract of employment. He appeals a decision of the Superior Court (*Dickson,* J.), granting the defendant's, Walker Power, Inc., motion for a directed verdict. Because we affirm that decision, we need not reach the issues raised by the defendant's cross-appeal.

The defendant supplies transformers and electrical power supplies for applications such as ion implantation, electroplating, vacuum furnace operation and other machinery applications. The plaintiff was employed by the defendant from December 1979 until July 1986. Although the plaintiff resigned from his employment with the defendant, the parties agree that the resignation, under the conditions then existing, amounted to constructive discharge.

The plaintiff sued the defendant alleging breach of implied contract and breach of the implied covenant of good faith and fair dealing. The case went to trial before a jury. After the plaintiff rested his case, the defendant successfully moved for a directed verdict. The plaintiff appeals.

The parties dispute whether the plaintiff was an employee at-will or a tenured employee entitled to damages for improper discharge. At the center of the dispute is a handbook issued by the defendant that included discharge procedures, but also included a disclaimer stating that the handbook created no "contract of employment." The handbook contains welcoming remarks and descriptions of the defendant's pay policy, employee benefits, and working conditions. Supplementing the handbook is a section applicable only to salaried employees, explaining the distinctions between the treatment of hourly and salaried employees.

Under the section of the handbook entitled "Your Working Conditions" is a subsection entitled "Rules and Regulations." The subsection lists various types of employee behavior that will lead to disciplinary action, which includes immediate termination. The next subsection, entitled "Employee Dismissal," outlines the defendant's three-step discipline process. The subsection states:

> "All employees will be given a fair and equitable warning as to their performance and conduct which might lead to

their dismissal. In order to make sure this is accomplished, the following procedures will apply upon completion of your probation period:

1) First incident—a verbal warning. You will be told specifically of your problem and your supervisor will place a note in your personnel file substantiating the incident which will be dated and signed. Record of verbal warnings will be kept in your file for 1 year.

2) Second incident—if a second incident occurs, you will be given a written warning describing the problem. Both you and your supervisor must sign the warning. You will be given a copy of the warning, and the original will be placed in your personnel file.

3) Third incident—at time of dismissal, you will be given third and final notice as to why you are being dismissed. A copy of the written notice and the termination notice will be given to you and the original will be given to the Personnel Department to be placed in your employee file."

The handbook fails to explain when the defendant will terminate immediately under the "Rules and Regulations" subsection, and when it will use the three-step discipline process. The handbook contains no express definition of what constitutes an "incident" that would trigger the three-step discipline process.

The defendant concedes it did not use the step discipline process when it terminated the plaintiff. The parties differ as to whether the step discipline process was a mandatory pretermination procedure, whether the step discipline process was applicable to the plaintiff, and, if applicable, whether the defendant was contractually bound to apply it to the plaintiff.

The plaintiff contends that the defendant was contractually bound to use the step discipline procedure because the terms of the handbook constitute part of the contractual employment relationship. The plaintiff would have the discipline procedure create a tenured employment relationship and prevent arbitrary discharge. The defendant characterizes the employment relationship as one at-will, contending that the defendant effectively disclaimed any intent to be contractually bound by the terms of the handbook with its inclusion of an employee acknowledgment in the handbook. At the time of the handbook's issuance, each employee signed an acknowledgment page of the handbook. The acknowledgment read as follows:

"THIS CERTIFIES that I have received, read and understand the Employee Handbook outlining Walker Power,

Inc.'s policies, rules and general information. I understand that this Handbook is not an expressed or implied contract of employment, but rather an overview of working rules and benefits, which can be changed at the discretion of the Company."

The plaintiff concedes he read and signed the acknowledgment.

■■ The trial court is permitted to direct a verdict "only if [it] determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." *Goodwin v. James*, 134 N.H. 579, 582, 595 A.2d 504, 506 (1991). This court will uphold a trial court's ruling on a motion for a directed verdict unless the record supports the conclusion that the trial judge abused his or her discretion in determining that no rational juror could find for the party against whom the motion is filed. *Vincent v. Public Serv. Co. of N.H.*, 129 N.H. 621, 625, 529 A.2d 397, 399 (1987).

We agree with the trial court that, due to the waiver in the acknowledgment, the defendant's issuance of the employee handbook did not modify the parties' at-will relationship and, therefore, that the defendant was not required to apply the discipline process to the plaintiff before terminating his employment.

■ This court has held that "the meaning of a contract is ultimately a matter of law for this court to decide. In reviewing a contract, we will give its language the interpretation that best reflects the parties' intentions." *Restaurant Operators, Inc. v. Jenney*, 128 N.H. 708, 710, 519 A.2d 256, 258 (1986) (citation omitted). In interpreting a contract, we will "consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984).

■ In New Hampshire, the at-will status of an employment relationship is "one of *prima facie* construction," *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 739, 547 A.2d 260, 267 (1988); it is a gap filler for determining duration when the parties' contract of employment is silent as to its expiration. *See generally* Feinman, *The Development of the Employment at Will Rule*, 20 AM. J. LEGAL HIST. 118, 119–22 (1976). The *Panto* court did an extensive analysis of whether unilateral offers, such as employee handbooks, might fill

the gap and create some durational obligation. *See Panto*, 130 N.H. at 737–39, 547 A.2d at 265–67.

*Panto* held that an employer's promulgation to its employees of a layoff policy providing post-termination benefits may be recognized as an offer to modify the contractual relationship between the employer and employees. *Panto*, 130 N.H. at 731, 547 A.2d at 261–62. An employee may accept the offer by continued performance of the employee's job responsibilities. The *Panto* court reached its decision on the basis that "compensation and fringe benefits are usual incidents of [the employment relationship, thus] it is generally true that a statement on these subjects by the party who pays the compensation can be viewed objectively as meant to be a subject of binding agreement." *Panto*, 130 N.H. at 735, 547 A.2d at 264 (citation omitted). The *Panto* court did not have before it the issue of durational modification. It noted that the defendant in *Panto* could have avoided contractual liability by clearly stating its intent not to be contractually bound by the terms of the promulgated policy. The court stated that the defendant "could simply have avoided the entire issue [of contractual liability] by announcing in the written policy itself that [the policy] was not an offer, or a policy enforceable as a contractual obligation." *Id.* at 742, 547 A.2d at 268.

For the case at hand, it is important that the *Panto* court drew a bright line between the durational status of an employee and the incidents of employment such as compensation and fringe benefits. *Panto*, 130 N.H. at 739, 547 A.2d at 267. The implication of the distinction is that there are contractual elements that exist independently of, or within, the durational status of the employment relationship. Regardless of whether an employment relationship is at-will or tenured, there still exist the incidents to such employment. These incidental benefits must be considered separately from the duration itself. In the instant case the trial court found that the handbook created no contractual obligations between the parties. It found that no reasonable juror could find the defendant was bound by its employee handbook because the disclaimer "clearly states that the handbook is not an expressed or implied contract of employment." The trial court, however, failed to distinguish between the durational status of the contract and the incidents to the contract, implicitly holding that the disclaimer waived all contractual obligations under the handbook. We do not believe such to be true. A reading of the disclaimer and the handbook as a whole makes it clear that the disclaimer cannot be read to apply to all terms in the handbook. The step discipline provisions are enforceable features, subject to the effect of the disclaimer.

Although the disclaimer in the instant case fails to elaborate on the defendant's intent as to the issue of at-will employment, *see Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 456 (6th Cir. 1986) (clear statement that employment may be terminated by either party with or without notice and with or without cause), we believe it is sufficiently clear to negate any inference that the handbook alters the presumptively at-will nature of the employment relationship. The disclaimer, by its own language, applies to the "contract of employment." We read this to refer to only the underlying agreement between the parties to employ and be employed and the durational aspect of the employment. It relates to the bare employment contract, stripped of all incidental benefits and secondary contractual relationships. By virtue of the disclaimer, however, the bare employment contract remains with a presumptive at-will status. Consequently, the step discipline process, although enforceable, cannot be interpreted as creating tenure for the plaintiff.

The plaintiff well might make a case asserting damages from failure to follow the step discipline procedure as a contractual incident of employment, unrelated to any durational claim. The ultimate act of termination would be a thin reed for such a case, since the right to arbitrary termination, absent violation of public policy, remains in the hands of the employer. Damages must arise from failure to follow the procedure short of termination. The record in this case discloses no evidence of damages independent of damages flowing from the loss of continued employment with the employer. Based on the record existing at the close of the plaintiff's case, the trial court properly directed a verdict for the defendant.

*Affirmed.*

All concurred.