Penney v. Middleton                    CV-92-555-B    08/24/95 P
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


Richard Penney, et al.

     v.                                    Civil No. 92-555-B

Town of Middleton, et al.


                         O R D E R

     Defendants, the Town of Middleton, Jeremy Johnson, and Roy

Snyder, move for summary judgment on most of the remaining claims

against them on the grounds of collateral estoppel and accord and

satisfaction.  Defendant Calvin Roach, pro se, also invokes the

collateral estoppel doctrine in support of his summary judgment

motion.  I deny both motions.  I also address a discovery

question raised by Calvin Roach.


                    I.  **BACKGROUND**

     The plaintiffs accept the defendants' recitation of the

procedural facts of the prior proceedings that form the basis for

the defendants' arguments.  Therefore, I adopt the defendants'

description of the prior proceedings and summarize other material

facts consonant with the familiar summary judgment standard.[1]

     ───────────────

        [1]  Summary judgment is appropriate only when the record
     shows that there is not a genuine dispute as to the material

## A.   The Declaratory Judgment Action and the First HUD Complaint

The Penneys moved to Middleton in 1981, buying a home that needed substantial renovation.  After some difficulty, they were allowed a property tax exemption in 1983 due to the fact that Mr. Penney was deemed to be legally blind.[2]

In 1986, a housing inspector working for the Strafford County Regional Planning Commission inspected the Penneys' house and determined that it required substantial improvements that could potentially be covered by funds made available pursuant to a Community Development Block Grant.[3]  However, due to confusion over the Penneys' income status, officials first indicated that they would receive a 100% grant but ultimately determined that they were eligible for only a 50% grant.

---

facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  I must view the record in the light most favorable to the non-moving party, the plaintiffs, and resolve all reasonable factual inferences in their favor.  Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

[2]  See N.H. Rev. Stat. Ann. § 72:37 (Supp. 1994).

[3]  The United States Department of Housing and Urban Development ("HUD") provided Community Development Block Grant program funds through the state to be disbursed through local governments for particular purposes to eligible applicants.  See 42 U.S.C.A. § 5303, et. seq. (West 1995).

In April 1988, the Penneys petitioned in Strafford County Superior Court for a declaratory judgment that they were entitled to a 100% grant. The next month they filed a complaint with HUD, their first of five complaints, alleging that the town had discriminated against them in administering the block grant program because of Mr. Penney's visual disability in violation of the Rehabilitation Act. The Penneys' lawsuit was dismissed in December 1989 when the court found that their allegations lacked merit. The 1988 HUD complaint resulted in a finding in February 1990 that the town had complied with the Rehabilitation Act.

B. **The Gun Permit Litigation**

On February 2, 1990, Middleton Police Chief, Jeremy Johnson, revoked a pistol permit that Mr. Penney had first obtained in 1984 and had renewed every two years thereafter. Penney filed a petition in Rochester District Court to have his permit restored, alleging that his permit was revoked unlawfully based on his visual impairment. Penney further alleged that Johnson and the town had been aware of his impairment during the six years he had held a permit. He claimed that the permit's revocation was unconstitutional and an abuse of discretion. Following a hearing on May 3, 1990, the district court denied his appeal of Johnson's decision to revoke his permit, ruling that in light of his visual

3

impairment, Penney had failed to carry his burden of proof that he was a suitable person to carry a pistol. Penney appealed the district court's decision to the New Hampshire Supreme Court. When on-going settlement negotiations later proved fruitful, Penney asked that his case be remanded to the district court and then to the town. The supreme court remanded the case to the district court. However, the district court refused to remand the case to the town and instead concluded that its earlier ruling did not prevent Penney from reapplying to the town for a new permit. Relying on this order, Penney abandoned the district court action, reapplied for a permit and received the permit after the town removed Johnson's permit authority. Nevertheless, when Johnson regained his permit authority in 1991, he again revoked Penney's gun permit.

## C.   Subsequent HUD Complaints

In February 1990, a few days after HUD's final determination of the Penneys' first complaint in the town's favor and Johnson's initial decision to revoke Mr. Penney's pistol permit, the Penneys filed a second HUD complaint charging the town with retaliation and discrimination against them because of their participation in the prior complaint. One of the alleged retaliatory acts was Johnson's revocation of Mr. Penney's pistol

4

permit.  The second HUD complaint was resolved by a voluntary compliance agreement between the town and HUD in September 1991.

During the same time period, the Penneys filed three other complaints with HUD.  The third complaint is the subject of the defendants' summary judgment motion.[4]  According to HUD's July 23, 1990, notice to the town, this complaint alleged that the town discriminated against the Penneys in determining whether they were eligible to participate in the block grant program. The third complaint was resolved on September 24, 1990, by a settlement agreement between the town and the Penneys in which the town agreed to award the Penneys funds under the program and the Penneys agreed to withdraw their complaint and not commence any additional actions against the town that were based on the town's administration of the block grant program prior to the date of the agreement.

D.  **The MCCG Litigation**

On May 31, 1991, the Middleton Concerned Citizens Group, Inc. ("MCCG"), including defendants Roy Snyder and Calvin Roach, filed suit against the town and two selectmen in superior court.

---

[4]  HUD administratively closed the fourth and fifth complaints.

MCCG sought a declaratory judgment and injunction to hold the selectmen, and the town, accountable for their handling of certain town affairs, including money spent on legal expenses in the Penneys' unsuccessful declaratory judgment action against the town. MCCG later sought to amend its complaint to add Mr. Penney as a party and to prevent the town from paying the Penneys' expenses as required in the September 1991 voluntary settlement agreement between HUD and the town. When the court granted a temporary injunction against paying the money, the Penneys sought to intervene in the action to dissolve the restraining order and requested attorney's fees. The superior court first dissolved the restraining order and granted the Penneys' motion to intervene. Later the court dismissed all of MCCG's claims and summarily denied all requests for attorney's fees.

I now address the issues raised by the defendants in their motion for summary judgment.


## II.  DISCUSSION

The defendants argue that the prior proceedings bar most of the Penneys' claims against them. I consider the preclusive effect of each proceeding in turn as the defendants have presented them.

6

**A.** **Whether the District Court's Decision Precludes the Penneys From Litigating the Issue of Wrongful Revocation of Richard Penney's Pistol Permit**

Many of the Penneys' claims against the town and Chief Johnson are based on their allegation that Johnson twice wrongfully revoked Mr. Penney's pistol permit. The Penneys claim that the permit revocations violated § 504 of the Rehabilitation Act by discriminating against a handicapped person based solely on his handicap and also by discriminating or retaliating against persons who file a complaint with HUD, which is prohibited by HUD's Rehabilitation Act regulation, 24 C.F.R. § 8.56(k). The defendants contend that the district court's ruling that Mr. Penney was not a suitable person to hold a pistol permit precludes the Penneys from litigating certain facts that are essential to their claims. The Penneys contest the preclusive effect of the district court ruling.

Because the defendants advance the preclusive effect of a New Hampshire state district court decision, I apply New Hampshire's collateral estoppel rule. See Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1096 (1st Cir. 1993). The following elements of collateral estoppel are well-established: (1) the issue or fact subject to estoppel must be identical in both actions; (2) the first action must have resulted in a final

7

resolution of the issue or fact on the merits; (3) the party to be estopped must be the same or in privity with the party in the first action; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue in the first action; and (5) the issue must have been essential to the final judgment in the first action. Simpson v. Calivas, 139 N.H. 1, ___, 650 A.2d 318, 323 (1994) (quoting Daigle v. Portsmouth, 129 N.H. 561, 570 (1987)).

Even if I were to accept defendants' contention that the other elements of an estoppel are present, I cannot agree that the district court finally resolved the issue as to whether Mr. Penney was a "suitable person" to hold a pistol permit. In refusing to remand the case to the town, the district court ruled that "the court finds no bar either in the statute or in this court's decision dated May 3, 1990 which would prevent Mr. Penney from filing a new pistol permit application with the town of Middelton, should he so desire." Since the record contains no indication that Penney's visual impairment had changed between the date of the court's May 3, 1990, ruling and the above-quoted order, it is plain that the district court did not consider the May 3, 1990, order a final resolution of whether Penney was a "suitable person" to hold a gun permit. Under these

8

circumstances, I decline to give collateral estoppel effect to the May 3, 1990, order. See, e.g., Restatement (Second) of Judgments § 14 (1982) (stating the rule for issue preclusion that where prior determinations of issues are inconsistent, the last determination is given preclusive effect).

B.  **Whether the Superior Court's Decision Not to Award Attorney's Fees in the MCCG Suit Precludes the Penneys' Claims**

Defendants Roy Snyder and Calvin Roach, former officers of MCCG, argue that the New Hampshire Superior Court's denial of the Penneys' request for attorney's fees in the MCCG suit, amounts to a finding that they did not act frivolously or in bad faith in attempting to join Mr. Penney in the suit. Therefore, Snyder and Roach contend, the Penneys are precluded from maintaining their claims for malicious prosecution or § 504 retaliation. I disagree.

An award of attorney's fees is left to the discretion of the trial court. Maguire v. Merrimack Mut. Ins. Co., 133 N.H. 51, 56 (1990). In the present case, the court did not explain its reasons for denying the Penneys' request for attorney's fees. Therefore, I cannot determine whether the court in fact determined that the Penneys had failed to prove that the MCCG plaintiffs had acted in bad faith. Accordingly, I decline to

9

give collateral estoppel effect to this ruling.

## C. Whether the 1990 Settlement Agreement Precludes the Penneys' Claims Arising Before the Agreement

Finally, the defendants point to the settlement agreement between the town and the Penneys signed in September 1990 as an accord and satisfaction of the Penneys' current claims.[5] The defendants argue that the 1990 settlement agreement bars all of the Penneys' claims based on actions by the town and any of its officials before the date of the agreement. The agreement does not support the defendants' interpretation.

The meaning of unambiguous contract language presents a question of law for the court to resolve. Butler v. Walker Power, 137 N.H. 432, 435 (1993). The Penneys' third HUD complaint, which was resolved by the settlement agreement in September 1990, alleged that the town had discriminated against them in determining their total income for purposes of eligibility for the block grant program. In the settlement agreement, the town agreed to award the Penneys $18,000 under the

---

[5] The Penneys' complaints to HUD resulted in two different agreements: a settlement agreement between the Penneys and the town in September 1990 settling their third complaint, and a voluntary compliance agreement between the town and HUD in September 1991 settling their second complaint.

10

block grant program.  In exchange, the Penneys agreed to withdraw their third HUD complaint and not to litigate "any actions taken by the Town of Middleton or the State of New Hampshire with regard to the administration of Middleton's Community Development Block Grant Program prior to September 1990."

The plain language of the September 1990 settlement agreement only precludes the Penneys from litigating claims arising from the discriminatory administration of the block grant program.  The Penneys make no such claims in this action.  Thus, their claims are not barred by the doctrine of accord and satisfaction.

**D.    Discovery Question**

Finally, defendant Calvin Roach asks whether he is obligated to respond to the Penneys' interrogatories and request for production of documents.  I direct Mr. Roach to Federal Rule of Civil Procedure 33 governing interrogatories and Rule 34 governing production of documents.  He is required to comply with the Rules of discovery as are all parties to the litigation.  If he finds that the requests submitted to him by the Penneys do not comply with the applicable rules, and if he wishes to object on valid grounds, he may file a motion for a protective order with the court stating his grounds.

### III. <u>CONCLUSION</u>

For the foregoing reasons defendants' motions for summary judgment (documents 175 and 178) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 24, 1995

cc:  Gordon Bleakney, Esq.
     Timothy Bates, Esq.
     Cynthia Satter, Esq.
     Edward Philpot, Esq.
     Calvin Roach, pro se
     Edward VanDorn, Esq.