Lowry v. Cabletron                    CV-96-452-SD 05/28/97   P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Doris Lowry


    v.                                    Civil No. 96-452-SD


Cabletron Systems, Inc.


## O R D E R

In this civil rights action, plaintiff claims that defendant discharged her from her supervisory position on the basis of her sex, age, and physical disability.  Plaintiff's seven-count complaint includes claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., as well as four counts grounded in state law.

Presently before the court is defendant's motion to dismiss. Plaintiff filed an objection, arguing primarily that defendant's motion was premature since plaintiff had not yet had an opportunity to perform discovery.

## Factual Allegations in Complaint

Plaintiff Doris Lowry was born on January 24, 1944, and has suffered from carpal tunnel syndrome, muscle spasms, back injuries, knee problems, and arthritis for several years. These conditions were caused by and/or aggravated by the work she performed as a supervisor at defendant Cabletron Systems, Inc. Cabletron was aware of Lowry's condition during the entire course of her employment, which began on a date not mentioned in the complaint.

On July 5, 1995, Lowry was informed by her supervisor and by a member of Cabletron's personnel department that she was being terminated because of unsatisfactory work performance. Lowry previously had been promoted several times and had received the highest possible salary increase following her periodic performance reviews. In terminating her, Cabletron deviated from its personnel policies, which required a warning and other procedures.

Cabletron later told the Equal Employment Opportunity Commission (EEOC) that Lowry was terminated following her arrest for possession of marijuana. However, by immediately terminating Lowry, Cabletron did not follow its own policy of counseling and otherwise aiding employees with drug-related problems.

The complaint alleges that the actual reason for Lowry's

dismissal was her disabilities.  In support of this contention, the complaint alleges that during the course of Lowry's employment she frequently was asked by her immediate supervisor, Rick Nichols, to fill in on a production line that required physical work that was not part of her regular duties.  Lowry refused each time because her physical ailments prevented such work.  In addition, Nichols and other supervisory personnel told Lowry's subordinates that "they were just looking for an excuse to get rid of her."  Complaint ¶ 15.

Plaintiff filed a charge of discrimination based on sex, age, and physical ability with the New Hampshire Commission for Human Rights on December 29, 1995.  The NHCHR did not process or investigate plaintiff's charge, but instead directed her to file her claims with the EEOC.  She then filed a charge with the EEOC on March 22, 1996.  Plaintiff received a notice of dismissal and right to sue from the EEOC on May 23, 1996, giving her 90 days from that date to file a suit in federal court.  She filed her complaint in this court on August 21, 1996.

<u>Discussion</u>

## 1.  Rule 12(b)(6) Standard

To resolve defendants' Rule 12(b)(6) motion, the court must "take the well-pleaded facts as they appear in the

3

complaint, extending plaintiff every reasonable inference in [her] favor." <u>Pihl v. Massachusetts Dep't of Educ.</u>, 9 F.3d 184, 187 (1st Cir. 1993) (citing <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 442-43 (1st Cir. 1992)).  A Rule 12(b)(6) dismissal is appropriate "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992) (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

<u>2.  The ADA, Title VII, and ADEA Claims</u>

The ADA was enacted to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  The employment provisions contained in Title I of the ADA prohibit "covered entit[ies]" from discriminating against "a qualified individual with a disability because of the disability" with respect to a term, condition, or privilege of employment.  42 U.S.C. § 12112(a).

To establish a claim of disability discrimination under the ADA, Lowry must prove by a preponderance of the evidence (1) that she was "disabled" within the meaning of the Act; (2) that she was able to perform the essential functions of her job, with or

4

without reasonable accommodation; and (3) that her employer discharged her in whole or in part because of her disability. Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996) (citing Katz v. City Metal Co., 87 F.3d 26, 30 (1st Cir. 1996)).

The ADA mentions three general categories of "disability":

> The term "disability" means with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).[1] The allegations in the complaint indicate that plaintiff's claim is that she was discriminated against on the basis of an actual disability, as described in subsection (A). To establish a disability in fact, plaintiff must show three elements: (1) a physical or mental impairment (2) substantially limiting (3) a major life activity. 42 U.S.C. § 12102(2).

For purposes of this discussion, the court will assume that plaintiff's carpal tunnel syndrome, arthritis, back problems, and other physical conditions constitute a "physical impairment"

---

"Disability" as defined under the ADA is substantially equivalent to "disability" as defined under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797, and the court will look to case law interpreting both statutes when analyzing plaintiff's evidence of "disability". See Nedder v. Rivier College, 908 F. Supp. 66, 74 n.7 (D.N.H. 1995).

5

under the Act.  The present issue is whether her condition "substantially limits" a major life activity.  Although plaintiff does not expressly identify a major life activity that is limited by her impairments, it appears that her claim concerns the major life activity of working.  See Complaint ¶ 14.  The gravamen of plaintiff's claim is that she was discharged as a result of her inability to perform production line work, a job that was not part of her regular duties as a supervisor.[2]  Defendant asserts that the inability to perform the narrow range of production line work would not constitute a substantial limitation of a major life activity, particularly as such work was not an essential part of Lowry's position as supervisor.

Under the EEOC regulations implementing the ADA, a person is substantially limited in the major life activity of working when

Her complaint states,

>     Lowry's job induced disability was one of the true reasons for the actions of Cabletron and its supervisors.  This subject had been a point of contention with Lowry's immediate supervisor, Rick Nichols.  Nichols would frequently ask[] Lowry to set aside her duties as a supervisor to fill in on production line physical work.  These jobs were not part of the regular duties of the supervisory position held by Lowry.  Lowry would have to refuse, since her disabilities prevented such labor.

Complaint ¶ 14.

6

he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3). This section further provides that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id.  Thus, impairments that affect a person's ability to perform a narrow range of jobs are not considered "substantially limiting." See McKay v. Toyota-Motor Mfg., U.S.A., Inc., 110 F.3d 369, 373 (6th Cir. 1997).

When determining whether an impairment is "substantially limiting," the court should consider the following factors:

> (i) The nature and severity of the impairment;
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).  In addition, when determining whether the plaintiff is substantially limited in the major life activity of "working," the court may consider,

> (A) The geographical area to which the individual has reasonable access;
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual

7

is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

Stripped to its essentials, defendant's argument is that plaintiff is not limited in her ability to perform the major life activity of working because she can perform work as a supervisor and therefore her employment opportunities are not limited. Defendant's Memorandum at 7-8. The regulations indicate, however, that when considering whether a plaintiff is substantially limited in his or her ability to work, the focus should be not on what he can do, but on what he is precluded from doing. The "Interpretive Guidance" to 29 C.F.R. § 1630.2(j) states:

"An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes, . . . . For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working, . . . . This would be so even if the individual were able to perform jobs in another class."

Cochrum v. Old Ben Coal Co., 102 F.3d 908, 911 (7th Cir. 1996)

8

(quoting "Interpretive Guidance" accompanying 29 C.F.R. § 1630.2(j)) (emphasis added). The complaint alleges that plaintiff's impairments precluded her from performing production line work. Giving plaintiff every inference in her favor, such limitation may well have concerned a broad range of work, as opposed to a narrow class.

Defendant relies on McKay v. Toyota Motor Mfg., U.S.A., 878 F. Supp. 1012 (E.D. Ky. 1995), which was affirmed by McKay, supra, 110 F.3d 369 (6th Cir. 1997), after the filing of defendant's motion. In McKay, the ADA plaintiff alleged she was terminated from her assembly-line position because of her carpal tunnel syndrome. Id. at 369. The circuit court affirmed the lower court's entry of summary judgment for defendant on the ground that plaintiff's impairment only precluded her from performing the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds. Id. at 373. The court found that plaintiff's impairment did not significantly restrict "her ability to perform a broad range of jobs in various classes." Id.

In contrast to the plaintiff in McKay, Lowry does not allege that she was unable to perform a subclass of production line work; rather, she appears to allege she was generally precluded from performing all production line work. Compare Cochrum v. Old

9

Ben Coal Co., 102 F.3d 908, 911 (7th Cir. 1996) (finding that evidence that former roof bolter's shoulder condition prevented him from doing all work requiring heavy lifting precluded summary judgment on the issue of his being "disabled," even though magistrate judge assumed plaintiff could find alternative employment) with Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (finding that welder who was prevented from performing welding jobs that required substantial climbing was not prevented from performing welding jobs in general).

Defendant next argues that the ADA specifically excludes from the definition of disabled employees "any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). However, from the court's reading of the complaint, plaintiff has alleged that her employer acted on the basis of her asserted disability, which is unrelated to her illegal use of drugs.

Finally, defendant argues that the allegations of the complaint do not suffice to show causation, or discrimination on the basis of disability, sex, or age. The court finds that for purposes of surviving a Rule 12(b)(6) motion, the allegations of

10

the complaint suffice.[3]

3.  The State Law Claims

Defendant also seeks dismissal of plaintiff's state law claims.  The complaint alleges violations of New Hampshire's Law Against Discrimination, New Hampshire Revised Statutes Annotated (RSA) 354-A (Counts IV-VI) and also contains a claim for wrongful discharge and breach of employment contract (Count VIII).  This court has previously concluded that RSA 354-A does not provide a private right of action.  Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 120 (D.N.H. 1995).  Instead, individuals alleging unlawful employment discrimination are limited to "seeking relief through the administrative process created by the statute and to obtaining judicial review of the results thereof in state court."  Id.  Accordingly, the court dismisses plaintiff's RSA 354-A claim.

An at-will employee seeking to establish a wrongful discharge claim under New Hampshire law must show:

> "one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public

However, although it is unclear whether plaintiff has brought a claim pursuant to 42 U.S.C. § 1983 as part of Count VII of the complaint, the court grants defendant's motion to dismiss such claim on the grounds that plaintiff fails to allege state action and that the facts do not give rise to an inference of same.

11

> policy would encourage or because he refused to
> perform acts which public policy would condemn."

Tsetseranos, supra, 893 F. Supp. at 120 (quoting Short v. School
Admin. Unit No. 16, 136 N.H. 76, 84, 612 A.2d 364, 370 (1992)).
The factual allegations of the complaint do not suggest that
plaintiff was terminated for performing an act that public policy
would encourage or for refusing to do an act against public
policy.  Accordingly, the court grants defendant's motion to
dismiss plaintiff's wrongful discharge claim.

In addition to the wrongful discharge claim under the at-
will employee doctrine, the complaint contains a claim for breach
"of the express and implied terms of the employment agreement
between the parties, as such agreement was reflected in the
written and unwritten policies of the employer, as well as
Cabletron's customary employment practices."  Complaint ¶ 23.

Under New Hampshire law, "the at-will status of an
employment relationship is 'one of prima facie construction.'"
Smith v. F.W. Morse & Co., 76 F.3d 413, 426 (1st Cir. 1996)
(quoting Panto v. Moore Business Forms, Inc., 130 N.H. 730, 739,
547 A.2d 260, 267 (1988)).  Stated another way, "unless an
employment relationship explicitly provides for a definite
duration, it is presumed to be at-will."  Id. (citing Butler v.
Walker Power, Inc., 137 N.H. 432, 435-36, 629 A.2d 91, 93
(1993)).  An employer can thus discharge an at-will employee at

12

any time and for any or no reason, "unless a statute, a collective bargaining agreement, or some aspect of public policy proscribes firing the employee on a particular basis." Id.

From the complaint, plaintiff appears to claim that an implied employment contract has arisen from a modification of her at-will employment status. Applying standard contract principles, before a contract can arise, "the 'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.'" Id. Unilateral offers, such as those within employee handbooks, at times may create limitations on the manner in which an employer can terminate its employees. See Butler, supra, 137 N.H. at 435-36, 629 A.2d at 93; Panto, supra, 130 N.H. at 737-79, 547 A.2d at 265-67. For example, a lay-off policy which provides post-termination benefits may be considered an offer to modify an employment contract, which then may be accepted by an employee by continuing to work for the employer. See, e.g., Panto, supra, 130 N.H. at 731, 547 A.2d at 261-62. Significant to this case, the at-will relationship may be changed by the distribution of an employee handbook that provides for some administrative due

13

process before termination.  See id. at 737, 547 A.2d at 265-66.[4]

According to the complaint, Lowry did not receive "the warnings and due process she was entitled to by Cabletron's personnel policies" before she was terminated.  Complaint ¶ 12. The complaint further alleges that, in violation of its own policies, Cabletron failed to give Lowry drug counseling and related aid before her termination.  The court finds that plaintiff's contentions suffice to allege the existence of an employment contract.  The court therefore denies defendant's motion to dismiss plaintiff's breach of contract claim.

The complaint further alleges that defendant breached the implied covenant of good faith and fair dealing inherent in plaintiff's employment contract.  Such an implied duty is recognized in three situations: (1) contract formation; (2) termination of at-will employment; and (3) discretion in contract performance.  Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139, 562 A.2d 187, 190 (1989).  The complaint appears to be asserting a claim under either the second or third category.  To the extent that plaintiff is asserting an implied duty relating to the termination of her at-will employment, such claim is subsumed by her wrongful discharge claim.  Plaintiff's category-

_____

An employer wishing to avoid creating an employment contract through its policies has the ability to do so via a disclaimer. Id. at 742, 547 A.2d at 268.

14

two claim for breach of the implied covenant must therefore be dismissed for the reasons animating the court's decision to dismiss plaintiff's wrongful discharge claim.

As for the category relating to discretion in contract performance, the general rule is as follows:

> [U]nder an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

Id. at 143, 562 A.2d at 193. An essential prerequisite to such claim is that the employer's promise be "subject to such a degree of discretion that its practical benefit could seemingly be withheld." Id. at 144, 562 A.2d at 193. As the complaint fails to allege facts to support the conclusion that defendant had such discretion, under either an express or an implied term of the contract, a category-three claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

## Conclusion

For the reasons stated above, the court grants defendant's motion to dismiss the 42 U.S.C. § 1983 claim, the RSA 354-A claim, the wrongful discharge claim, and the claim for breach of

15

the implied covenant of good faith and fair dealing.  The remainder of defendant's motion is denied.  Accordingly, the ADA, ADEA, Title VII, and breach-of-contract claims remain viable.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

May 28, 1997

cc:   Sven D. Wiberg, Esq.
      Andru H. Volinsky, Esq.