Kaechele v. Nova Inform. Sys.          CV-00-313-JD  09/24/01
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Cynthia H. Kaechele
and Christopher Kaechele

      v.                              Civil No. 00-313-JD
                                      Opinion No. 2001 DNH 174
Nova Information Systems, Inc.


                              O R D E R


      The plaintiffs, Cynthia and Christopher Kaechele, bring suit

against their former employer, Nova Information Systems, Inc.,

alleging claims of promissory estoppel, breach of the covenant of

good faith and fair dealing, fraud, negligent misrepresentation,

and quantum meruit.[1]  The plaintiffs also seek a declaratory

judgment, pursuant to 28 U.S.C.A. § 2201, that Nova's non-compete

agreement is unenforceable.  Nova moves for summary judgment on

the plaintiffs' remaining claims, except the claim for a

declaratory judgment.


                          Standard of Review

      Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

_____

      [1]The Kaecheles' claim pursuant to New Hampshire Revised
Statutes Annotated chapter 339-E was previously dismissed.  The
Kaecheles have now also dismissed their breach of contract and
wage claims.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact is one that "has the potential to change the outcome of the suit under the governing law" and a factual dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Grant's Dairy--Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999).

A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). The party with the burden of proof cannot rely on speculation or conjecture and must present "more than a mere scintilla of evidence in [his] favor." Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st

2

Cir. 2001). An absence of evidence on a material issue weighs against the party who would bear the burden of proof at trial on that issue. See Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).

Background

Christopher Kaechele began working for Central Banc Service, Inc. ("CBS"), a credit card processing company, in 1991. Robert Murphy was president and majority shareholder of CBS. Christopher Kaechele's job with CBS was to recruit new customers and then to service his customers. CBS employees were not paid a salary, but instead received commissions based on an agreed amount paid for each credit card transaction made by his or her customers. The transactions commissions were called residuals. Cynthia Kaechele began working for CBS in 1994, and thereafter, Christopher and Cynthia worked as a team.

In 1998, when Mellon Bank, which processed CBS's clients' transactions, notified Murphy that it planned to stop its credit card business, Murphy began to look for merger possibilities for CBS. During merger negotiations, Murphy understood that CBS would remain an autonomous company after the merger.

CBS and Nova entered a merger agreement on November 20, 1998. CBS continued its operations as usual after the merger

3

agreement was signed.  In early 1999, however, Nova began the process of converting CBS to Nova's operating system.  The conversion was extremely difficult and stressful for all CBS employees.

In October of 1999, Nova asked Murphy to have CBS employees sign Nova employment agreements.  The agreement, titled "Agreement Regarding Employment Matters for Nova Corporation Sales Force," included a non-compete clause.  The Kaecheles, along with other CBS employees, were concerned about the non-compete clause.  Murphy encouraged them to sign and told them that he understood, based on his dealings with Nova, that nothing would change.  He characterized signing the agreements as a "no brainer" and "no big deal."  Christopher's dep. at 89-90; Cynthia's dep. at 110-11, 114-15.  Christopher signed the agreement and then joined Murphy to persuade Cynthia to sign.

Murphy encouraged Cynthia to contact Nova's attorney about her concerns.  Murphy gave Cynthia the attorney's name and telephone number.  Cynthia called but never talked with the attorney.  After more persuasion, Cynthia also signed the agreement.

Murphy returned the signed agreements to Nova in early November.  Later in November, people from Nova called to say that a representative would be coming to see how CBS closed its books

4

each month.  When the Nova representative arrived, he told Murphy that the accounting function was being moved to Nova headquarters in Atlanta, Georgia, and would no longer be done by CBS.  More changes occurred during December of 1999 and early 2000.

In February of 2000, Murphy was informed that the compensation system for former CBS employees would be changed to the Nova system.  The new compensation plan was presented to Murphy in March of 2000.  Murphy thought that the new plan had unfavorable pricing structures and unreasonable goals for signing new customers.  Murphy was very disappointed and upset.  The Nova employee compensation system paid a "salary" based on accomplishing set quotas and ended the residuals system that CBS used for employee compensation.  Nova required the former CBS employees to sign the new compensation plan.

The Kaecheles refused to sign.  They were excluded from meetings and their company pager was terminated.  They heard from a customer that Nova said they had left the company.  On May 2, 2000, the Kaecheles notified Nova that they were leaving the company.

## Discussion

Nova moves for summary judgment on the Kaecheles' claims of promissory estoppel, breach of the duty good faith and fair

5

dealing, quantum meruit, fraud, and negligent misrepresentation. Nova has not addressed the claim for declaratory judgment. The Kaecheles object to summary judgment.

The affidavits of Christopher and Cynthia Kaechele, which merely refer to their counsel's factual statements in the memorandum in opposition to summary judgment and are based on their information and belief, do not satisfy the requirements of Federal Rule of Civil Procedure 56(e). See Perez, 247 F.3d at 315-16. As such, they are incompetent to oppose summary judgment. See Rule 56(e). Since Nova has not moved to strike the affidavits or objected to them in anyway, however, the affidavits remain as part of the record for summary judgment. See Perez, 247 F.3d at 314-15. Despite Nova's failure to object, the affidavits, which lack affirmative factual statements based on personal knowledge, have little persuasive value.

A.  Promissory Estoppel

The theory of promissory estoppel operates "to impute contractual stature based upon an underlying promise, and to provide a remedy to the party who detrimentally relies on the promise." Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 290 ((1992). Under an estoppel theory, "a promise reasonably understood as intended to induce action is enforceable

by one who relies upon it to his detriment or to the benefit of the promisor." Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 738 (1988). To prove such a claim, the plaintiff's reliance on the promise must be reasonable. See Marbucco Corp. v. City of Manchester, 137 N.H. 629, 633 (1993). In addition, the promise must be sufficiently definite to permit a reasonable understanding that a commitment has been made. See Michelson v. Digital Fin. Serv., 167 F.3d 715, 725 (1st Cir. 1999); Kiely v. Raytheon Co., 105 F.3d 734, 736 (1st Cir. 1997).

It is undisputed that representations made by Murphy are construed as the representations of Nova. Murphy told the Kaecheles generally that based on his understanding, nothing would change. See Murphy dep. at 134-36. Murphy told Christopher that he should sign the non-compete agreement, saying "'It's a no-brainer. Nothin's gonna happen.'" Christopher's dep. at 87 (quoting Murphy). More specifically, with respect to compensation, he told Cynthia, "nothing was going to change, to his knowledge."[2] Cynthia's dep. at 115. He also suggested that Cynthia contact Nova's attorney about her concerns.

_____

[2]The Kaecheles' argument, that the deposition statements limiting Murphy's representations to his knowledge or his understanding were taken out of context, is unpersuasive since the same limitations are used and repeated in both Murphy's and Cynthia's depositions.

7

The Kaecheles contend that Murphy's statements were promises that Nova would not change the CBS compensation system. Nova argues that Murphy's statements were not sufficiently certain to constitute binding promises about the compensation system.[3] Nova also argues that the Kaecheles' reliance on such statements as promises of a particular compensation system was unreasonable.

Under the particular circumstances of this case, Murphy's statements were not sufficiently definite to constitute promises that Nova would not change the compensation system. Murphy's general statement that "nothin's gonna change" does not promise that Nova would continue the CBS compensation system indefinitely. Murphy's more specific statements were significantly undermined by the limitations based on Murphy's knowledge or understanding and Murphy's suggestion that Cynthia should contact Nova's attorney about her concerns. Therefore, based on the record presented, since the Kaecheles cannot show that Murphy promised them a particular compensation system, as they claim, no trialworthy issue remains on their promissory estoppel claim.

---

[3]Nova's argument that claims of promissory estoppel by at-will employees, such as the Kaecheles, fail as a matter of law appears to be contrary to New Hampshire law. See Butler v. Walker Power, Inc., 137 N.H. 432, 436 (1993) (explaining that the incidents of employment, such as compensation, may be established without affecting at-will status).

B.  Good Faith and Fair Dealing

Nova contends that the Kaecheles cannot prove a claim of breach of the implied duty of good faith and fair dealing.  The Kaecheles' opposition to summary judgment on this claim is confusing.  In the memorandum supporting their objection, the Kaecheles argue that they can proceed under three versions of the good faith and fair dealing duty described in Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139-44 (1989).  Based on their surreply memorandum, however, the Kaecheles appear to have limited their claim to good faith and fair dealing in the context of the termination of their at-will employment.

In order to prove a claim of breach of the implied duty of good faith and fair dealing in the context of terminating an at-will employee, the plaintiff must show that he or she was discharged "out of malice or bad faith in retaliation for action taken or refused by the employee in consonance with public policy."  See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 140 (1989).  The Kaecheles have not presented any evidence of malice or bad faith or evidence that they were discharged, constructively or otherwise, in retaliation for their actions or inactions favored by public policy.  Therefore, Nova is entitled to summary judgment on the claim of breach of the implied duty of

9

good faith and fair dealing based on the termination of their employment.

To the extent that the Kaecheles also intended to bring claims under the first and third versions of the implied obligation, as described in Centronics, they have not shown that material factual disputes exist as to such claims. The first type of claim involves good faith in contract formation, obligating contracting parties "to refrain from misrepresentation and to correct subsequently discovered error, in so far as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." Centronics, 132 N.H. at 139. Since the Kaecheles have not pointed to any evidence that Murphy intentionally misrepresented that the compensation system would not change or that he learned of his error and failed to correct it before the agreements were signed, Nova is entitled to summary judgment on that claim.

The third version of good faith and fair dealing operates in circumstances where an agreement appears "to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value." Id. at 143. In that case, the good faith obligation requires the party with such discretion "to observe reasonable

10

limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting." Id. The Kaecheles argue that Nova was obligated to exercise discretion in altering their compensation system after the non-compete agreement was signed. Since the non-compete agreement does not include any provisions applicable to the compensation system, the Kaecheles' argument is misplaced.

C.    The Misrepresentation Claims

The Kaecheles allege claims for fraud and negligent misrepresentation. "To establish fraud, a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Snierson v. Scruton, 761 A.2d 1046, 1049 (N.H. 2000). Negligent misrepresentation involves the unintentional misrepresentation of material fact by the defendant and justifiable reliance by the plaintiff. See id. "'It is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them.'" Patch v. Arsenault, 139 N.H. 313, 319 (1995) (quoting McCarthy v. Barrows, 118 N.H. 173, 175 (1978)). A victim of misrepresenta-

11

tion may justifiably rely on representations unless contrary facts are or should be apparent or unless he or she has discovered something that serves as a warning of deception.  See Field v. Mans, 516 U.S. 59, 71 (1995).

There is no evidence in the record that Murphy told the Kaecheles that nothing would change knowing that to be false or with conscious indifference to the truth.  Instead, the record evidence overwhelmingly shows that Murphy believed his statements were true and was shocked and upset when he learned that Nova was changing the compensation system.  Absent evidence that Murphy knew that his statements were false or was consciously indifferent to the truth, no trialworthy issues exists as to the fraud claim.

With respect to negligent misrepresentation, however, Murphy, as an officer of Nova, at least had access to more information about Nova's operations and plans.  The record does not show that Murphy made any effort to verify his statements that nothing would change, which he volunteered to induce the Kaecheles to sign the agreements.  Nothing in the record shows that the Kaecheles knew or should have been warned that Murphy's representations were false.

Contrary to Murphy's representations, the record, taken in the light most favorable to the Kaecheles, suggests that Nova was

planning to change to a uniform compensation system and to discontinue the CBS system. Those plans may have been in progress in November of 1999 when Murphy told the Kaecheles that nothing would change. Since a reasonable jury could find, based on the present record taken in the appropriate light, that Murphy negligently misrepresented that no change would occur and that the Kaecheles justifiably relied on his representations, summary judgment is not appropriate on that claim.[4]

D. Unjust Enrichment Claim

The doctrine of quantum meruit or unjust enrichment provides an equitable remedy in the absence of an enforceable contractual relationship. See Pella Windows & Doors, Inc. v. Faraci, 133 N.H. 585, 586 (1990). When the doctrine applies, "[a] trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable for him to retain." Kowalski v. Cedars of Portsmouth Condominium Ass'n, 769 A.2d 344, 347 (N.H. 2000). "To

_____

[4]Nova's argument that Murphy's statements were promises, not factual misrepresentations, is not persuasive. For purposes of summary judgment on the misrepresentation claim, Nova's distinction between Murphy's representations about the commission system specifically and more general representations that nothing would change are not material.

13

entitle one to restitution, it must be shown that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to retain." Cohen v. Frank Developers, Inc., 118 N.H. 512, 518 (1978) (quotation omitted).

The Kaecheles allege that they worked for Nova with the expectation that they would be paid under the CBS compensation system and that Nova received the benefits of their efforts but stopped paying them under that system. In their objection to summary judgment, the Kaecheles appear to change their claim, arguing that Nova obtained the non-compete agreement under false pretenses, which conferred substantial benefit to Nova for which the Kaecheles should be compensated. Nova contends that no unjust enrichment occurred.

It is unlikely that an unjust enrichment claim arises from a contractual relationship, as the Kaecheles now claim. See, e.g., Pella, 133 N.H. at 586. In addition, the Kaecheles cannot amend their complaint by arguments made in opposition to summary judgment. See Bauchman v. West High Sch., 132 F.3d 542, 550 (10th Cir. 1997). The Kaecheles also do not point to record evidence to support either unjust enrichment theory.

The non-compete agreement signed in November of 1999 stated that the Kaecheles' continued employment at Nova and certain

14

options to purchase stock constituted consideration for that agreement. There is no evidence that the Kaecheles did not receive the promised consideration. The Kaecheles continued to work for Nova, and apparently were paid, until they quit in May of 2000. They have not shown that the were not compensated for any benefit that they provided to Nova. Therefore, Nova is entitled to summary judgment on the unjust enrichment claim.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 18) is granted as to counts II, III, V, and VII. Counts I, IV, and VIII have been dismissed. The claims remaining in the case are for negligent misrepresentation, Count VI, and declaratory judgment, Count IX.

Since the issues in the case have now been considerably narrowed, counsel are expected to use their best efforts to resolve the remaining issues before trial which is scheduled to begin on October 16, 2001.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

September 24, 2001
cc:  Donald C. Crandlemire, Esquire
     Christopher Cole, Esquire

15